WM. S. MERRELL CHEMICAL COMPANY, Appellant, vs. A. SPIEGEL COMPANY, Respondent.

SAME, Respondent, vs. SAME, Appellant.

*March 19—April 9, 1907.*

*Contracts: Construction: Court and jury: Selection of goods sold: Warranty: Evidence of breach.*

1. The construction of a written contract, when not dependent upon extrinsic facts as to which the evidence is conflicting, is a question of law for the court.

2. In a contract for the sale of a stock of drugs and pharmaceutical preparations, a provision that all the stock furnished should "be carefully selected to meet the wants of the physicians and druggists" of the vendee's locality is construed not to be a warranty that the goods should be adapted and suitable to meet such wants, but at most an agreement on the part of the vendor, if it assumed to select the stock, to exercise due care and good faith in making the selection for the purpose specified; and where such care and good faith are shown, evidence that orders by subsequent purchasers from the vendee called for a small percentage of goods not included in the stock selected by the vendor does not even tend to show a breach of the contract.

APPEALS from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed on plaintiff's appeal.*

Action upon a promissory note of $375, to which was interposed, first, a defense that the consideration of the note was a certain mutual contract which had been breached in certain respects by the plaintiff; and, secondly, counterclaim based upon the same contract and the alleged breaches thereof. The plaintiff is a manufacturer of drugs and pharmaceutical preparations at Cincinnati, Ohio. The defendant, for many years, has been engaged in the drug business at Milwaukee, both as a retailer and a jobber, and had for many years prior to 1903 been familiar with the goods manufactured by the plaintiff, which were well-known articles in the trade. On

or about June 1, 1903, the parties entered into a written contract whereby the plaintiff agreed to sell and the defendant to purchase a stock of goods of plaintiff's manufacture to the amount of $1,500, at a discount from retail prices specified in the catalogue of forty per cent. and twelve and one-half per cent. on part, and forty per cent. and ten per cent. on part— "all the stock thus furnished to be carefully selected to meet the wants of the physicians and druggists of Milwaukee, Wisconsin, and vicinity;" the defendant agreeing to give the plaintiff its active influence and co-operation in extending the sale of the latter's preparations in the prescribed territory, and to keep up the assortment of said stock so as to meet the requirements of the drug trade and the medical profession. The term of the contract was one year. The plaintiff agreed to personally canvass by competent agents the territory tributary to Milwaukee and to turn over orders to the defendant for execution to the amount of $1,000 within a year. Also to exchange such goods as might be found least desirable for trade, for other articles of plaintiff's manufacture, with certain limitations as to time, and also the limitation that exchanges should only be made in what was called part 1 of the catalogue. Part 1 of the catalogue contained all the staple drugs and preparations in the various forms of oils, elixirs, tablets, pills, powders, and the like, from which approximately five sixths of all sales were ordinarily made, while parts 2, 3, and 4 contained certain specialties and proprietary combinations. The grounds of counterclaim were: First, that the stock of goods shipped to the defendant was not carefully selected so as to meet the demands of the trade at and tributary to Milwaukee; and, secondly, that the plaintiff did not, in accordance with the contract, duly canvass such territory and turn over orders to the defendant, and that such orders as it did take and turn over were not at adequate prices.

The court directed a verdict for the plaintiff upon its note, and submitted to the jury a general verdict upon defendant's

counterclaim, whereon the jury found damages in defendant's favor to the amount of $400, which, being deducted as of the date of the verdict from the amount of the $375 note with interest from its maturity, left a balance of $29.68 in plaintiff's favor, for which judgment was entered. Plaintiff had moved to direct a verdict in its favor on the counterclaim, and also moved to set aside the verdict and grant a new trial. Defendant moved for a judgment in its favor based upon an allowance of interest on the $400 damages from the date of the breach of the contract. Plaintiff appeals from so much of the judgment as allows any part of the counterclaim to be deducted from the amount of its note and interest. Defendant appeals from so much as disallows it interest upon its damages from the time of the alleged breach of the contract by plaintiff.

For the plaintiff as appellant there were briefs by *Winkler, Flanders, Bottum & Fawsett,* and a reply brief signed also by *Stanley W. Merrell,* of counsel; for the plaintiff as respondent there was a brief by *Winkler, Flanders, Bottum & Fawsett;* and the cause was argued orally by *F. C. Winkler* and *C. F. Fawsett.*

For the defendant there was a brief by *Glicksman & Gold,* and oral argument by *W. L. Gold.*

DODGE, J. The trial of this action proceeded upon the construction of the contract that, if the plaintiff assumed the duty of making the selection of the goods in question, there resulted a warranty that the same should be adapted and suitable to meet the wants of the physicians and druggists of Milwaukee and vicinity, and the court submitted to the jury the question whether that duty of selection was cast upon the plaintiff or the defendant and whether the goods satisfied that warranty. In these respects we think obvious and radical error was committed. The construction of the written contract, unless dependent upon some conflicting extrinsic facts,

was for the court as a question of law. We find no evidence
of extrinsic facts which could have withdrawn this question
from the field of judicial construction and transferred it into
a question of fact. Approaching it in this light, and con-
ceding, for the purposes of argument, that the parties contem-
plated that a selection would be made, or at least originally
suggested, by the seller, it seems to us obvious that, neverthe-
less, there was no warranty expressed therein that the goods
so selected should accord with the demands developed in prac-
tical working of the trade in and about Milwaukee thereafter.
The articles themselves named in the plaintiff's catalogue were
well-known commodities, the quality of each of which for the
purposes designed is in no wise assailed. The selection of
$1,500 worth therefrom was, of course, merely a choosing of
those articles most likely to meet the demands of the pre-
scribed locality and in the proportions most likely to accord
with that demand. What that demand would prove to be
was, of course, impossible of knowledge beforehand. While
the diseases generally prevalent in a given vicinity may be
measured by past experience to some extent, any attempt at
prophecy must of necessity be approximate only. An epi-
demic of some not usually prevalent disease may cause a de-
mand for certain kinds of medicines wholly disproportionate
to anything suggested by past experience. It is therefore in-
conceivable that parties should undertake that any assortment
of drugs and medicines made up in advance should prove to
accord with the demands developed through an ensuing year.
The defendant had the experience of years in the drug trade
in the vicinity, and necessarily knew as much, or more, of
the probabilities, as also of the uncertainties, as could the
plaintiff.

From considerations such as these we reach the conclusion
that there was in this contract no warranty, but, at best, an
agreement on the part of the plaintiff to exercise due care and
good faith in any selection it might make, if it assumed to

select the stock of goods thus contracted for. The proof as to the conduct of the plaintiff in reference to this selection is undisputed. Its agent, who had negotiated the contract and had had two or three years' experience in the jobbing trade in drugs in Milwaukee and Wisconsin, was asked by the defendant to prepare a list of goods preliminarily to the signing of the contract, and did so, delivering it to the defendant, in whose possession it remained for approximately a week, when it was returned to plaintiff's agent, without comment, and as apparently satisfactory. This list was made, as plaintiff's agent testifies without contradiction, upon a computation by him of his own experience in selling goods from the plaintiff's catalogue in the jobbing trade at and near Milwaukee, principally to physicians. He made a careful analysis and tabulation of the orders which he had taken and of the quantities of the various articles which had been sold during those years, and made his list both in the selection of medicines and in the proportions thereof according to such experience. If this be true, it is full and complete compliance with the contract in that respect on plaintiff's part. It is a careful selection, made in good faith, with reference to the probable demands and needs of the physicians and druggists of Milwaukee and vicinity. A careful search of the evidence discloses none in conflict, except that of one of defendant's officers to the effect that the stock did not prove to be well adapted to the demand at Milwaukee and vicinity. It should be said here, in parenthesis, perhaps, that the experiment extended only from June until mid-September, when defendant repudiated the contract, and all further experiments with the jobbing trade ceased. This testimony of the defendant's officer is shown by his cross-examination to depend entirely on the fact that it was unable to fill all of the orders which plaintiff's agent obtained and turned over to it, out of the stock which had been supplied it, but was obliged in many, if not most, instances to order still further goods from the plaintiff to complete the

orders taken.   This evidence is very much weakened by the admission of the witness that he knew nothing of the subject personally, except what was told him by clerks and subordinates.   It is, however, made to appear that such orders were filled out of the stock on hand to a large extent, and that generally not more than twenty-five per cent. thereof was found to be lacking, and it was proved, practically without dispute, that a large portion of the extra goods ordered to enable the filling of these jobbing orders by the defendant were rendered necessary, not by inadequacy of the stock selected by plaintiff, but were required in advance of the receipt of that stock. Further, as bearing upon this subject, it is significant that, from the making of the contract about the 1st of June until its repudiation in September by the defendant, some thirty-five specific jobbing orders had been filled without any complaint or suggestion that the stock supplied under it was not found to be adapted to the demand disclosed by specific purchases.   We cannot think this evidence, merely to the effect, that these subsequent orders by purchasers called for a small percentage of goods which were not included in the stock selected by the plaintiff, can serve at all to put in issue the full and complete proof of the exercise of care and honest judgment in their selection.   Hence we conclude that there was no proof to go to the jury as to the breach of this term of the contract.

As to the other alleged breach by the plaintiff, that it did not diligently canvass the contract territory and did not make sales in accordance with the contemplation of the contract, the record is equally barren of evidence.   The proof is direct and undisputed that plaintiff's agent persistently and continuously solicited trade from physicians and retail druggists, and in the course of about three months turned over to the defendant orders for approximately $300 worth of goods.   The only duty in this respect assumed by the plaintiff was that, within the year, it would obtain and turn over such orders to

the amount of $1,000. Clearly, this stipulation is not shown to have been breached. But the contention now made by the defendant is that the goods were not sold at a high enough price. They were substantially all sold at a discount of twenty-five per cent. from the retail list price, thus yielding a profit to the defendant of over forty per cent. upon some goods, while upon others it may have been as low as twenty-five per cent. At one place defendant seems to suggest that it expected that these sales to the jobbing trade would be made at list prices; but this was wholly refuted by the fact that the list prices were those at which retail sales were expected to be made to individuals, and by the express testimony of Mr. Spiegel himself that he knew that sales to the jobbing trade were to be at a discount. There is abundant proof that this rate of discount was usual in jobbing sales and sales to physicians. There is therefore no proof that defendant had any reason outside the contract to expect any larger prices to be obtained, and, inasmuch as the contract is entirely silent as to the rates at which these jobbing orders were to be taken, we can find no evidence to justify a holding of any breach in this respect. The good faith of this part of defendant's contention is at least impugned by the fact that, for three months, it persisted in filling these orders as they came in, at this uniform price, without comment or complaint, and that not until it declared its intention to repudiate the contract, and refused to pay the note which it had given for part of the purchase price, was any suggestion made that the sale price was not in accord with its understanding and expectation or with the contract.

Our conclusion is that uncontradicted evidence established complete performance of the written contract on plaintiff's part and that the counterclaim was unsupported by any evidence. All the issues appear to have been exhaustively tried, and we can discover no reason to anticipate that the situation could be changed upon further trial.

*By the Court.*—Upon plaintiff's appeal judgment reversed, and cause remanded with directions to enter judgment in accordance with the prayer of the complaint; defendant to take nothing by its appeal.

SIEBECKER and KERWIN, JJ., dissent.

CASSODAY, C. J., and TIMLIN, J., took no part.